Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
John A. Young (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400

Attorneys for Plaintiff STRONG HUYNH, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRONG HUYNH, as an individual, and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>JABIL INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3: 22-CV-07460-WHO<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable William H. Orrick<br>Courtroom: 2, 17th Floor<br><br>Date:      July 10, 2024<br>Time:      2:00 p.m.<br>Courtroom:  2<br><br>Complaint Filed:  October 21, 2022<br>Date of Removal:  November 23, 2022<br>Trial Date:  None Yet Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 10, 2024, at 2:00 p.m. in the above-entitled court, pursuant to Federal Rule of Civil Procedure 23, Plaintiff Strong Huynh ("Plaintiff") will move the Court for an Order granting preliminary approval of the proposed class action settlement between Plaintiff and Jabil Inc. ("Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"). The settlement is memorialized in the Parties' Joint Stipulation of Class Action Settlement, submitted herewith as Exhibit A to the Declaration of Kevin Mahoney. ("Settlement Agreement" or "Agreement")

The Parties will further move the Court for an Order:

1. Certifying for settlement purposes the following class:

   a. All current or former non-exempt employees who worked for Defendant in California during the Class Period. This definition expressly excludes any former non-exempt employees who worked for Defendant in California during the Class Period (i) who signed severance agreements in connection with reductions in force and who were not re-hired to work for Defendant in California after executing the severance agreement or (ii) who participated in the Walker Settlement and who have not worked for Defendant in California after January 19, 2021.

2. Preliminarily approving Settlement;

3. Appointing Plaintiff as Class Representative for settlement purposes;

4. Appointing Plaintiff's counsel, Kevin Mahoney and John Young of Mahoney Law Group, APC as Class Counsel for settlement purposes;

5. Approving Phoenix Class Action Administrators as Settlement Administrators;

6. Approving the form and content of the Class Notice, and directing the mailing of same;

7. Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

8.    Directing Defendant to provide the Class Data to the Settlement Administrator within fourteen (14) calendar days after the Court grants preliminary approval of the Settlement; and

9.    Setting a Final Approval Hearing.

The motion will be based upon this notice, the attached memorandum of points and authorities, the Declarations of Kevin Mahoney, John Young, and Plaintiff concurrently filed herewith, the records and files in this action, and any other further evidence or argument that the Court may properly receive at or before the hearing.

Date: June 25, 2024

> By:    *Kevin Mahoney*
> **MAHONEY LAW GROUP, APC**
> Kevin Mahoney
> John Young
> Attorneys for Plaintiff, Strong Huynh

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND..................................4

  A.   The Parties .................................................................4

  B.   Procedural History and Plaintiff's Claims..............................4

  C.   Mediations With Tripper Ortman and Jeffrey Fuchsman ................5

III.  SUMMARY OF SETTLEMENT TERMS .......................................6

  A.   Monetary Terms ..........................................................6

  B.   Settlement Class Members' Released Claims ............................7

IV.   CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES IS
APPROPRIATE..........................................................................8

  **A.   Numerosity** ................................................................8

  **B.   Common Issues of Law and Fact** ......................................9

  **C.   Typicality**..................................................................10

  **D.   Adequacy of Representation** ............................................11

  **E.   Conditional Certification Pursuant to FRCP 23(b)(3) is  Appropriate as
Common Questions Predominate** ......................................11

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.12

  A.   Strength of Plaintiff's Case and Risk, Complexity, and Likely Duration of
Further Litigation.........................................................14

  B.   Amount Offered in Settlement ..........................................17

  C.   Extent of Discovery Proceedings and Stage of the Proceedings...................19

  D.   Experience and views of counsel .......................................20

  E.   Arm's length negotiation free from collusion .........................20

**VII.  THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE
PROCESS** ..............................................................................21

**VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**.......23

IX.   CONCLUSION .............................................................23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acosta v. Trans Union, LLC,*
  (C.D. Cal. 2007) 243 F.R.D. 377 ................................................................. 27

*Amchem Products, Inc. v. Windsor,*
  (1997) 521 U.S. 591 .............................................................................. 24, 25

*Armstrong v. Davis,*
  (9th Cir. 2001) 275 F.3d 849 ...................................................................... 22

*Arnold v. United Artists Theatre Circuit, Inc.,*
  (N.D. Cal. 1994) 158 F.R.D. 439 ................................................................. 21

*Brinker Restaurant Corp. v. Superior Court,*
  (2012) 53 Cal.4th 1004 .............................................................................. 22

*Capitol People First v. State Dept. of Developmental Services,*
  (2007) 155 Cal.App.4th 676 ....................................................................... 23

*Cochran v. Schwan's Home Service, Inc.,*
  (2014) 229 Cal.App.4th 1137 ..................................................................... 15

*Comcast Corp. v. Behrend,*
  (2013) 569 U.S. 27 .................................................................................... 25

*Day v. NLO,*
  (S.D. Ohio 1994) 851 F.Supp. 869 ............................................................. 23

*Ferrell v. Buckingham Property Management,*
  (E.D. Cal., July 30, 2020, No. 119CV00332NONESAB) 2020 WL 4364647 ... 30

*General Telephone Co. of Southwest v. Falcon,*
  (1982) 457 U.S. 147 .................................................................................. 23

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................... Passim

*/-/-/*

*Hanon v. Dataproducts Corp.*,

    (9th Cir. 1992) 976 F.2d 497.................................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935................................................................... 26, 27, 32

*In re Chicken Antitrust Litigation American Poultry*,

    (5th Cir. 1982) 669 F.2d 228.................................................................. 30

*In re Immune Response Securities Litigation*,

    (S.D. Cal. 2007) 497 F.Supp.2d 1166.................................................... 32

*In re Linkedin User Privacy Litigation*,

    (N.D. Cal. 2015) 309 F.R.D. 573............................................................. 29

*In re Mego Financial Corp. Securities Litigation*,

    (9th Cir. 2000) 213 F.3d 454........................................................ 29, 31

*In re Omnivision Technologies, Inc.*,

    (N.D. Cal. 2008) 559 F.Supp.2d 1036.................................................... 32

*In re Pacific Enterprises Securities Litigation*,

    (9th Cir. 1995) 47 F.3d 373...................................................................... 31

*In re Tableware Antitrust Litigation*,

    (N.D. Cal. 2007) 484 F.Supp.2d 1078............................................... 27, 29

*In re Vizio, Inc., Consumer Privacy Litigation*,

    (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639 ........ 29

*Joh v. American Income Life Ins. Co.*,

    2020 WL 109067 (N.D.Cal. Jan. 9, 2020) ............................................. 33

*Lerwill v. Inflight Motion Pictures, Inc.*,

    (9th Cir. 1978) 582 F.2d 507.................................................................... 21

*Linney v. Cellular Alaska Partnership*,

    (9th Cir. 1998) 151 F.3d 1234.................................................. 29, 30, 31, 32

*McGhee v. Bank of America*,

    (1976) 60 Cal.App.3d 442...................................................................... 24

3

*McPherson v. EF Intercultural Foundation, Inc.,*
    (2020) 47 Cal.App.5th 243 ................................................... 14

*Mendiola v. CPS Security Solutions, Inc.,*
    (2015) 60 Cal.4th 833 ......................................................... 28

*Minnick v. Automotive Creations, Inc.,*
    (2017) 13 Cal.App.5th 1000 ................................................. 14

*Mora v. Cal West Ag Services, Inc.,*
    (E.D. Cal., May 13, 2019, No. 115CV01490LJOEPG) 2019 WL 2084725 ....... 28

*Munday v. Navy Fed. Credit Union,*
    2016 WL 7655807 (C.D. Cal. Sept. 15, 2016) .................................... 27

*Naranjo v. Spectrum Security Services, Inc.,*
    (2019) 40 Cal.App.5th 444 ................................................... 15

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    (C.D. Cal. 2004) 221 F.R.D. 523 ............................................ 27, 32

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
    (9th Cir. 1982) 688 F.2d 615 ................................................. 26

*Rodriguez v. Hayes,*
    (9th Cir. 2010) 591 F.3d 1105 ............................................... 23

*Rollins v. Dignity Health,*
    336 F.R.D. 456 (N.D.Cal. 2020) ............................................. 33

*Schuchardt v. Law Office of Rory W. Clark,*
    (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435 ............... 29

*Scott v. HSS, Inc.,*
    2017 WL 10378588 (C.D.Cal. Apr. 11, 2017) .................................. 27

*Staton v. Boeing Co.,*
    (9th Cir. 2003) 327 F.3d 938 ................................................ 26

*Suastez v. Plastic Dress-Up Co.,*
    (1982) 31 Cal.3d 774 ........................................................ 14

*Tibble v. Edison Intern.*,

    (9th Cir. 2013) 711 F.3d 1061 ................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S.Ct. 2541 (2011) ............................................................... 11, 22

*Wehner v. Syntex Corp.*,

    (N.D. Cal. 1987) 117 F.R.D. 641 ............................................................. 23


Statutes

Bus. & Prof. Code § 17200 ......................................................................... 9, 19

California Labor Code section 2698 ........................................................ 18, 20

California Labor Code section 2699(i) ........................................................... 18


Rules

Fed.R.Civ.P. 23(c)(2)(B) ................................................................................ 33

Federal Rule of Civil Procedure 23 ......................................... 3, 24, 26, 35

Federal Rule of Civil Procedure 23 (a)(1) ..................................................... 21

Federal Rules of Civil Procedure 23(e)(1)(B) ............................................... 33

FRCP 23(b)(3) ......................................................................................... 24, 25

Rule 23(a) and 23(b) ..................................................................................... 21

Rule 23(a) of the Federal Rules of Civil Procedure ................................. 20, 24

Rule 23(b) ...................................................................................................... 21

Rule 23(e)(2) .................................................................................................. 25

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Strong Huynh ("Plaintiff") submits this memorandum in support of his unopposed Motion for Preliminary Approval of Class Action Settlement.  The Parties negotiated the proposed Settlement at arms' length.  It is fair and reasonable and will dispose of this class action in its entirety.

Plaintiff is a former non-exempt employee of Defendant Jabil Inc. (Defendant" and, collectively with Plaintiff, the "Parties") and worked for Defendant in California as a non-exempt hourly employee from about 2019 through October 2021.  Plaintiff filed this wage and hour class action, alleging that Defendant violated California labor laws by failing to pay wages for all hours worked, failing to timely pay wages to employees whose employment had terminated, failing to provide accurate itemized wage statements, failure to provide timely uninterrupted meal and rest periods, and failure to indemnify for business expenditures. Plaintiff further alleges that Defendant violated the unfair competition law (Bus. & Prof. Code § 17200, *et seq.*). (Plaintiff's complaint is ECF Dkt. No. 22.) Defendant denies all allegations. Plaintiff brought this class action lawsuit on behalf of himself and all persons who were employed by Defendant in California as a non-exempt employee from four (4) years prior to the commencement of this action through present. (Declaration of Kevin Mahoney ("Mahoney Dec."), ¶3.) Plaintiff now seeks preliminary approval of the Joint Stipulation of Class Action Settlement (hereinafter "Agreement" or "Settlement Agreement"), which will resolve this action in its entirety. Although the operative complaint defines the proposed class as all persons who were employed by Defendant in California as a non-exempt employee from four (4) years prior to the commencement of this action through present, the Parties have agreed to limit the scope of the class for settlement purposes to exclude any former non-exempt employees who worked for Defendant in California during the Class Period (i) who signed severance agreements in connection with reductions in

force and who were not re-hired to work for Defendant in California after executing the severance agreement or (ii) who participated in the Walker Settlement and who have not worked for Defendant in California after January 19, 2021.  The difference in composition between the proposed settlement class and the proposed class in the operative pleading is warranted because individuals who signed severance and were not re-hired to work for Defendant in California after executing the severance agreement and individuals who participated in the Walker Settlement have already received compensation for their release of the claims that Plaintiff is pursuing on a class-wide basis in this case.

If approved by the Court, the Settlement will create a gross settlement amount (hereinafter referred to as "Gross Settlement Amount") in the amount of one million forty thousand dollars ($1,040,000.00) for approximately one thousand one hundred fifty (1,150) Class Members. (Mahoney Dec., ¶4.) The Gross Settlement Amount includes payments made to Settlement Class Members, settlement administration costs, awards of attorneys' fees and expenses, and a service award to Plaintiff as set forth below. The proposed Settlement is non-reversionary.   Class Members will not be required to submit claim forms in order to receive their share of the settlement proceeds. Pursuant to the terms of the Settlement Agreement, Class Members will be provided with a court approved Notice describing the settlement in detail, which will include each Class Member's anticipated share of the settlement, premised on the Court's approval of administrative costs, attorneys' fees and expenses, and Plaintiff's service award approved by the Court as requested ("Class Notice"). (Mahoney Dec., Ex. A, Exhibit A to the Settlement Agreement.) Following receipt of the Class Notice, the Class Members will have the option to "opt out" or elect not to participate in the settlement. If they do not affirmatively make that election, then each remaining Class Member will receive a settlement check after the "effective date" of the settlement is reached, following the Final Approval of the Settlement.

The Parties' settlement was reached after two (2), arms-length mediations with experienced wage and hour mediators, Tripper Ortman, Esq. and Jeffrey Fuchsman, Esq. (Mahoney Dec., ¶¶6-7.)    Information exchanged prior to the mediation included redacted wage and hour information, time and pay records for approximately twenty-five percent (25%) of the Class, all Plaintiff's time and pay records, employee handbooks, and other policies. Expert analysis was used by Plaintiff for both mediations to analyze and extrapolate the time and payroll records exchanged. Further, Defendant provided information and documents regarding the prior wage and hour class action settlement reached by Defendant that obtained final approval on May 12, 2022, pertaining to the following cases: *Walker v. Jabil Inc. et al.*, Santa Clara County Superior Court, Case No. 19CV347835; *Moss v. Jabil Inc. et al.*, Alameda County Superior Court, Case No. RG19039453; and *Moss v. Jabil Inc. et al.*, Alameda County Superior Court, Case No. HG20050536. The Parties disagreed extensively on the theories involved in the litigation throughout both mediation sessions.  During the mediations, the Parties fully explored and discussed with the mediators, legal issues in the case, potential strengths and weaknesses on both sides. At the conclusion of the second mediation, the mediator made a mediator's proposal that both Parties subsequently accepted. (Mahoney Dec., ¶¶6-7.) The settlement reached between the Parties takes into account the expense, complexity of continued litigation and risk that certification may not be granted and, if so, that it may not be maintained under principles outlined by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). In addition, the Parties' proposed settlement accounts for Defendant's affirmative defenses, which, if Defendant was successful would result in Plaintiff and class members receiving nothing.

Plaintiff therefore requests that the Court grant this Motion for Preliminary Approval of Class Action Settlement, approve the Notice Packet to Settlement Class Members, appoint Phoenix Class Action Administration Solutions as the Class

Administrator, and schedule a Final Approval Hearing. Defendant does not oppose this request. Plaintiff further requests that this Court provisionally certify a settlement class for settlement purposes only. Plaintiff asserts that provisional certification is appropriate because the proposed class is ascertainable, common questions of law and fact predominate over any individualized questions, Plaintiff's claims are typical of those of the Stipulated Class Members, Plaintiff and his counsel can adequately represent the Class Members, and proceeding as a class action is a superior means of resolving this dispute.  Pursuant to 28 U.S.C. § 1715, Defendant will serve the appropriate state and federal officials with the notice of proposed settlement within 10 days of the filing of this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant is a Delaware corporation that manufactures that is involved in the design, engineering, and manufacturing of electronic circuit board assemblies and systems, in addition to supply chain services and was Plaintiff's employer. Defendant is conducting business in good standing in California, and at all times herein mentioned has regularly conducted business throughout the State of California.

Plaintiff was employed by Defendant as a non-exempt employee from in or about 2019 through October 2021.

### B.    Procedural History and Plaintiff's Claims

On October 21, 2022, Plaintiff filed this instant lawsuit on behalf of himself and a putative class in Alameda County Superior Court which was removed to this Court by Defendant.  Defendant moved to dismiss Plaintiff's complaint. In lieu of a ruling from the Court, on December 8, 2022, Plaintiff filed a First Amended Complaint.  Defendant moved to dismiss the First Amended Complaint which was granted in part dismissing claims under California Labor Code section 204, 206 and 1174 and denied in part. (Dkt. 31).  In Plaintiff's First Amended Complaint, Plaintiff

alleges that Defendant (1) failed to pay employees for all wages for all hours worked; (2) caused missed meal periods; (3) caused missed rest breaks; (4) failed to provide all wages due upon discharge; (5) failed to provide itemized wage statements and maintain accurate payroll records; (6) failed to indemnify employees for necessary business expenses, including cell phone expenses; and (7) Violation of Bus. & Prof. Code §§ 17200 *et seq*. (Unfair Business Practices).

Plaintiff's theories are detailed below is Section V.A. below.  As Plaintiff's theories of liability are based on policies that apply to all non-exempt hourly employees and were subjected to the Defendant's policies, Plaintiff is confident class certification would be granted as to all causes of action. As discussed below, Defendant denies all liability. Defendant maintains that Class Members were paid all wages, subject to a lawful meal and rest period policies and were not required to reimburse expenses as required under California law.   Defendant further contends that they have complied at all times with all applicable California laws, including the *California Labor Code*, the applicable California Wage Order(s), and the Unfair Competition Law.   Defendant contends that if this action were to be litigated further, Defendant would have strong defenses to class certification and on the merits.

## C.    Mediations With Tripper Ortman and Jeffrey Fuchsman

On November 6, 2023, the Parties attended a private mediation with mediator Tripper Ortman, Esq.  The Parties did not reach a settlement at the first mediation. On April 11, 2024, the Parties attended a second full day in-person mediation with Jeffrey Fuchsman, Esq., a well-known and experienced wage and hour class action mediator. During the mediation the Parties fully explored and discussed with the mediator legal issues in the case, potential strengths and weaknesses on both sides. At the conclusion of the mediation, the mediator made a mediator's proposal that both Parties subsequently accepted.  The parties then negotiated several drafts of the settlement agreement.  The Parties memorialized the Settlement in a Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Settlement").

(Mahoney Dec., ¶¶6-7, Ex. A.)

Prior to each mediation, the Parties engaged in informal discovery. Defendant provided to Plaintiff time and pay records for twenty-five percent of the Class, Defendant's written policies and handbooks, and identified the number of employees comprising the putative class, as well as the relevant total workweeks and pay periods. Further, Defendant provided information and documents regarding the prior wage and hour class action settlement reached by Defendant that obtained final approval on May 12, 2022, pertaining to the following cases: *Walker v. Jabil Inc. et al.*, Santa Clara County Superior Court, Case No. 19CV347835; *Moss v. Jabil Inc. et al.*, Alameda County Superior Court, Case No. RG19039453; and *Moss v. Jabil Inc. et al.*, Alameda County Superior Court, Case No. HG20050536. Using these records, Plaintiff retained an expert to analyze the records and prepare a potential maximum exposure damage model for mediation. Class Counsel also conducted extensive research and investigation into the potential claims before the case was filed. (Mahoney Dec. ¶ 8.) Plaintiff was able to reasonably assess liability on the part of Defendant and the resulting value of damages, paving the way for the proposed settlement terms.

Based on analysis of Plaintiff's claims and Defendants' defenses, Plaintiff and his counsel determined that the agreed-upon sum of one million forty thousand dollars ($1,040,000.00) was a reasonable and appropriate as a gross settlement amount.   (Mahoney Dec. ¶¶ 19-37.)

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Monetary Terms

Pursuant to the settlement agreement, and in consideration for the releases of all claims at issue, Defendant agrees to pay an amount one million forty thousand dollars ($1,040,000.00) (the "Gross Settlement Amount"), excluding Defendant's side of payroll taxes (which Defendant will pay separately), as a full and complete settlement of all claims arising from the action for all Class Members. The Gross

Settlement Amount includes payments made to Settlement Class Members, settlement administration costs, awards of attorneys' fees and expenses, and the service award for Plaintiff, if approved. (Mahoney Supp. Dec., Ex. A, ¶1.16).) The Settlement Agreement provides that the Gross Settlement Amount will be allocated as follows:

- Administration will be handled by Phoenix Class Action Administrators, a third-party settlement Administrator, and the cost of the Administration shall not exceed nine thousand dollars ($9,000.00) and will be paid out of the Gross Settlement Amount (Mahoney Dec. Exhibit A, Paragraph 3.1);

- Defendant will not oppose an application for a Class Representative Award in the amount of five thousand dollars ($5,000.00), to be paid out of the Gross Settlement Amount (Mahoney Dec. Exhibit A, Paragraph 5.1.2);

- Defendant will not oppose Class Counsel's application for a Class Counsel Fees in the amount of (i) 33⅓% of the Gross Settlement Amount (or $346,632.00) and (ii) litigation costs of up to twenty-five thousand dollars ($25,000.00) (Mahoney Dec. Exhibit A, Paragraph 5.1.1);

**B.    Settlement Class Members' Released Claims**

By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, all Settlement Class Members fully release Defendant and each Released Party from any and all claims arising during the Class Period that were alleged in any operative complaint or that could have been alleged based on the factual allegations in any operative complaint, including California Labor Code sections 201, 202, 203, 204, 206, 226, 226.3, 226.7, 510, 512, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 2802, the applicable Industrial Welfare Commission Wage Orders and California Code of

Regulations, and California Business and Professions Code section 17200 et seq. No release in this Settlement shall be effective until the Gross Settlement Amount has been deposited with the Settlement Administrator. (Mahoney Dec., Ex. A, ¶6.1.)

## IV.    CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Parties have stipulated that the court may, for settlement purposes only, certify a Settlement Class. A proposed class may be conditionally certified if it "satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. (*Hanlon v. Chrysler Corp.*  150 F.3d 1011, 1019 (9th Cir. 1998).) The party seeking certification of a proposed settlement class must also show that the action falls within one of the three subsections of Rule 23(b) relating to predominance of common questions and superiority of the class action mechanism. All of the requirements of Rule 23(a) and 23(b) are met here.

### A.    Numerosity

Federal Rule of Civil Procedure 23 (a)(1) requires that the class is so numerous that joinder of all members is impracticable. Numerosity does not require that joinder of all Members be impossible, but only that joinder be impracticable. (*Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440.) In this matter, the Settlement Class includes approximately 1,150 current and former employees, and therefore, numerosity is easily established. (Mahoney Dec., ¶4.) Given the common issues of law and fact present in the case, numerosity is satisfied.

Additionally, the proposed class must be ascertainable, and must identify, "a distinct group of plaintiffs whose members can be identified with particularity." (*Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1978) 582 F.2d 507, 512.)   Here, the members of the proposed class can easily be identified through Defendant's own

timekeeping, payroll records and other employment records. Therefore, the settlement class is both sufficiently numerous and ascertainable.

## B.  Common Issues of Law and Fact

The commonality requirement is met if there are questions of law and fact common to the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"). Here, Plaintiff maintains that common factual and legal issues include, among other things: (1) whether Defendant engaged in a common course of failing to compensate Class Members for all hours worked, (2) whether Class Members were not reimbursed for necessary business expenses; (3) whether Defendant failed to provide timely uninterrupted meal periods or compensation in lieu thereof; (4) whether Defendant failed to provide timely uninterrupted rest periods or compensation in lieu thereof; and (5) whether these alleged violations resulted in ancillary violations of Labor Code, § 203, and 226, as well as whether they support the basis for relief under the UCL. Defendant does not oppose these contentions for the purpose of this Settlement only. Furthermore, Plaintiff asserts that all Class Members suffer from, and seek redress for, the same alleged injuries. Similarly, Defendant does not oppose these contentions for the purpose of this settlement only. Under these specific circumstances, Plaintiff maintains that the commonality requirement is satisfied. (See *Id.* at p. 1019–20.)  Further, the Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis* (9th Cir. 2001) 275 F.3d 849, 868. Therefore, to satisfy the commonality requirement, the claims must depend upon a common contention that "must be of such a nature that it is capable of class wide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one stroke." *Dukes, supra*, 131 S.Ct. at 2551.

Plaintiff alleges that all claims in this Action are based on common, class-wide policies and procedures, and that liability could accordingly be determined on a class-wide basis, without dependence on individual assessments of liability. *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.)   Accordingly, Plaintiff asserts that the answers to the aforementioned questions determine liability to all Class Members claims, wherein commonality is satisfied.

## C.    Typicality

The typicality requirement is met if the claims of the name representative is typical of those of the class, though "they need not be substantially identical." (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *Classen v. Weller*, 145 Ca1. App. 3d 27, 46-47 (1983).)   Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. (*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147; *Wehner v. Syntex Corp.* (N.D. Cal. 1987) 117 F.R.D. 641, 644.) This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes* (9th Cir. 2010) 591 F.3d 1105, 1124. The permissive standard of typicality focuses on similarity between the legal theories of the proposed class representatives and the legal theories of those class members they seek to represent. *See Tibble v. Edison Intern.* (9th Cir. 2013) 711 F.3d 1061, 1074. In deciding whether individual variations preclude typicality, the focus should be on the behavior of the defendants. *Day v. NLO* (S.D. Ohio 1994) 851 F.Supp. 869, 884; *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 692–93. The typicality requirement is satisfied "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs,

and whether the other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508.

In this case, Plaintiff alleges claims based on Defendant's conduct and policies and practices applicable to all Class Members. Further, Plaintiff seeks the similar damages (i.e., unpaid wages, penalties, etc.) as other current and former employees.   Therefore, Plaintiff asserts that typicality is easily met in this matter. Defendant does not oppose this assertion, for the purpose of this Settlement motion only.

### D.    Adequacy of Representation

The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450–51.)   Plaintiff's counsel is experienced in wage and hour class litigation. (Mahoney Dec., ¶¶9-18; Declaration of John A. Young ("Young Dec."), ¶8.) Plaintiff and his counsel have fairly and adequately represented the proposed settlement class and have vigorously prosecuted this action on behalf of the proposed settlement class.   Plaintiff and his counsel do not have any claims or interests which conflict or are antagonistic to the class.   (Mahoney Dec., ¶¶17-18.) The adequacy requirement is met where, as here, the class representative's claims are sufficiently interrelated to and not antagonistic to the claims of the class. (*Hanlon*, *supra*, 150 F.3d at p. 1020.)

Therefore, Plaintiff maintains that the requirements of Fed. R. Civ. P. 23(a) are met in this matter.

### E.    Conditional Certification Pursuant to FRCP 23(b)(3) is Appropriate as Common Questions Predominate

Under Fed. R. Civ. P 23(b)(3), a Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and

that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3).) This requirement is met in this instant matter.   When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620.) The manageability of trying the case as a class action is not a factor for a settlement-only class. (*Id.* at p. 620.)

As detailed above, Plaintiff maintains that his allegations against Defendant raises common questions about the policies of Defendant, and the class members' potential legal remedies are identical. Plaintiff asserts that the proposed class in this case is sufficiently cohesive because, for purposes of the Settlement only, the parties agree that all class members share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, *supra*, 150 F.3d 1011, where the Ninth Circuit approved class certification under the standards set forth in *Amchem*. Plaintiff further asserts that the proposed Stipulated Class in this case is sufficiently cohesive to warrant adjudication by representation. See *Comcast Corp. v. Behrend* (2013) 569 U.S. 27. Thus, this class may be certified for settlement purposes.   Furthermore, the proposed Settlement herein is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

To preliminarily approve a proposed class action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2) In turn, review of a proposed settlement typically proceeds in two stages:

(1)   The Court first conducts a preliminary fairness evaluation, and if the Court preliminarily approves the settlement as falling within the range of possible settlement approval, notice to the

12

class is then disseminated and a "fairness" or final approval hearing is scheduled.

(2)    A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

(Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).) "The decision to [grant preliminary approval and] give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23 at Committee Notes on Rules – 2018 Amendment.

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625. "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its

entirety.'" *Staton*, *supra*, 327 F.3d at p. 960 (quoting *Hanlon*, *supra*, 150 F.3d at p. 1026).

In addition to these factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47. Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

At this preliminary stage, "a full fairness analysis is unnecessary." *Munday v. Navy Fed. Credit Union* No. 15-1629-JLS-KES; 2016 WL 7655807, at *7 (C.D. Cal. Sept. 15, 2016). ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out." *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079 (internal citations and quotation marks omitted); *see also Acosta v. Trans Union, LLC* (C.D. Cal. 2007) 243 F.R.D. 377, 386.

For the reasons provided below, Plaintiff requests that the Court grant preliminary approval of the Settlement.

A. **Strength of Plaintiff's Case and Risk, Complexity, and Likely Duration of Further Litigation**

"Settlement eliminates the risks inherent in certifying a class, prevailing at

trial and withstanding any subsequent appeals, and it may provide the last opportunity for class members to obtain relief." *Scott v. HSS, Inc.,* 2017 WL 10378588 *8 (C.D.Cal. Apr. 11, 2017). Given he potential risks of further litigation, this factor weighs in favor of granting preliminary approval. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526 ["In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."]).

The Court must also take into account the potential risks if litigation were to proceed, including difficulties in calculating damages, unsettled or unclear law and difficulties in securing witnesses for trial. (*Mora v. Cal West Ag Services, Inc.* (E.D. Cal., May 13, 2019, No. 115CV01490LJOEPG) 2019 WL 2084725, at *5.) Further, the Court also must consider whether an action is anticipated to continue with vigorous litigation and lengthy challenges regarding the merits of the claims and that Defendant may prevail on their defenses. *Id.*

Plaintiff believes in the merits of this case and believes that he will prevail should the case proceed to certification and trial. (Mahoney Dec., ¶23.) Plaintiff alleges Class Members were not paid for all time worked for time spent being screed for COVID-19 and for time spent responding to supervisors/managers while off-the-clock during meal periods. Defendant provided written policies effective during the Class Period that required employees to record all hours worked "even if its for a small increment of time" and a policy wherein employees could submit a Time Adjustment Form if they believed they were required to work off-the-clock. As such, Defendant contends that its policies are clear that Class Members were required to accurately record all time worked. Defendant further believes it paid all employees for all hours worked at the proper rate of pay and that required overtime was properly paid to all non-exempt employees. Defendant further contends that if there were any pay errors, they were inadvertent and represented individual

circumstances not suitable for class action treatment. (Mahoney Dec., ¶27.) Plaintiff contends that during the Class Period, Defendant failed to pay all overtime wages. Plaintiff and Class Members routinely work over eight (8) hours a day and over forty (40) hours a week. However, Defendant failed to properly pay all overtime wages. Specifically, Plaintiff's theory that Defendants failed to include all non-discretionary incentive payments in the regular rate of pay for overtime purposes. Defendant's position is that there are no additional amounts owed to Plaintiff and or Class Members as Defendants considers all renumeration paid when it calculates Plaintiff's and putative class members' overtime rate.  Further, it was contested that Defendant need not include payments such as "shift premium" payments because the payments were "percentage bonuses" similar to *Lemm v. Ecolab Inc.*, 87 Cal.App. 5th 159 (2023).  This would be a highly contested legal issue that the parties would each have sought summary adjudication. (Mahoney Dec., ¶29.) Plaintiff contends that meal periods, when provided, were provided after the fifth hour of work, or interrupted due to business needs, regardless of each employee's start time in violation of the California Labor Code. In addition, Plaintiff alleged that Defendant failed to provide a second uninterrupted meal period for all shifts over ten (10) hours in a day. Plaintiff contends that meal period premiums were not provided for each and every violation which occurred. Defendant contends their current meal period policies and practices are and always have been lawful in that non-exempt employees have been "provided" meal periods as required, and its policies and practices comply with the Labor Code, the Wage Orders, and all applicable California state and federal laws. (Mahoney Dec., ¶30.)   Plaintiff contends that rest periods, when provided, were routinely interrupted due to business needs and Defendant's prioritization work responsibilities over mandatory rest periods in violation of the California Labor Code. Plaintiff contends that rest period premiums were not provided for each and every violation which occurred. Defendant contends their current rest period policies and practices are and always

have been lawful in that non-exempt employees have been "provided" rest periods as required, and its policies and practices comply with the Labor Code, the Wage Orders, and all applicable California state and federal laws. (Mahoney Dec., ¶31.)

Despite the strengths of Plaintiff's case, Plaintiff believes that the inherent risks, complexity, and costs of what has so far been a protracted litigation weighs in favor of preliminary approval of the Settlement. If litigation continued, these issues and more would be the subject of extensive motion practice likely before and after certification. Therefore, these factors weigh in favor of preliminary approval.

### B.    Amount Offered in Settlement

"To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchardt v. Law Office of Rory W. Clark* (N.D. Cal., Jan. 20, 2016, No. 15-CV-01329-JSC) 2016 WL 232435, at *10 (quoting *Tableware*, *supra*, 484 F. Supp. 2d at 1080). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Linkedin User Privacy Litigation* (N.D. Cal. 2015) 309 F.R.D. 573, 587. A settlement amount that is only a fraction of the potential recovery does not render a settlement inadequate or unfair per se. *In re Vizio, Inc., Consumer Privacy Litigation* (C.D. Cal., Jan. 4, 2019, No. 816ML02693JLSKES) 2019 WL 12966639, at *9; *see also In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 459.

Fairness of a settlement is not conditioned upon Plaintiffs having obtained the maximum amount Plaintiffs could have been awarded at trial, but rather, whether the settlement is reasonable under the totality of the relevant circumstances. As the 9th Circuit noted in *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242: "It is the very uncertainty of outcome in litigation and

avoidance of wasteful and expensive litigation that induce consensual settlement. The proposed settlement is not judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.")

Individual Settlement Payments shall be made without the need to submit a claim form and shall be calculated by (i) dividing the Settlement Class Member's total number of workweeks worked for Defendant in California after the end of the Walker Settlement Period (i.e., January 19, 2021, through July 10, 2024, or the date of the Preliminary Approval Order, whichever is earlier) by the total number of workweeks worked by all Settlement Class Members for Defendant during the same time period, and (ii) multiplying that pro rata share by the Net Settlement Amount. The calculation of Individual Settlement Payments shall be construed from Defendant's records. (Mahoney Dec., Ex. A, ¶5.2.)

Here, Plaintiff was provided with the total workweeks worked collectively by the Class (approximately 105,000 workweeks), sampling of time and pay records, the total number of Class Members and applicable policies to Plaintiff's claims at issue. From this information, Plaintiff was able to obtain an expert analysis and damage model projecting the potential maximum exposure in this case. (Mahoney Dec., ¶¶26-36.) Overall, Plaintiff estimates Class Members will receive approximately twenty-six percent (26%) of the reasonable estimated value and as such is fair and reasonable. (Mahoney Dec., ¶36.) This is within the range of reasonableness to warrant preliminary approval. *See Singh v. Roadrunner Intermodal Svcs., LLC,* 2018 WL 242325 *7 (E.D.Cal. May 29, 2018) [approving 12% of estimated maximum damages]; *Ferrell v. Buckingham Property Management* (E.D. Cal., July 30, 2020, No. 119CV00332NONESAB) 2020 WL 4364647, at *2 [approving settlement amounting to 5.3% of estimated damages]; *Balderas v. Message Envy Franchising, LLC,* 2014 WL 3160945 *5 (N.D.Cal. July 21, 2014) [approving settlement amounting to 5% of total value].

### C.      Extent of Discovery Proceedings and Stage of the Proceedings

With regard to the extent of discovery, "'formal discovery is not a necessary ticket to the bargaining table.'" *Linney*, *supra*, 151 F.3d 1234, 1239 (quoting *In re Chicken Antitrust Litigation American Poultry* (5ᵗʰ Cir. 1982) 669 F.2d 228, 241). This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about the settlement." *Linney, supra* at 1239. Discovery can formal or informal or both. *See In re Mego Financial Corp. Securities Litigation*  213 F.3d 454 (9th Cir. 2000) [finding plaintiffs had sufficient information to make an informed decision about the settlement where formal discovery had not been completed but class counsel had conducted significant investigation, research and presented court with documentation supporting those services.]

Plaintiff maintains that this Settlement represents a significant guaranteed recovery for all the Settlement Class Members. In advance of the first mediation, Defendant agreed to, and did, provide Plaintiff with informal discovery relating to the size and scope of the class, total work weeks in the class period, sampling of Class Members' time records and pay records, and applicable employee handbooks containing Defendants' wage and hour policies. Prior to the second mediation Defendant's counsel provide updated data for the Class Members. (Mahoney Dec. ¶20.)

Here significant information regarding the potential claims and legal issues was investigated by Class Counsel before the case was even filed. (Mahoney Dec., ¶8, ¶20.) The Parties also discussed extensively the claims, supporting evidence, and documents during the Rule 26(f) conference. Prior to mediation, Class Counsel was provided with documents and data sufficient to engage an expert potential liability model. (*Id*.) Finally, additional legal issues, challenges and data were discussed and exchanged at mediation. Therefore, this factor weighs in favor of preliminary approval.

### D.    Experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects the expected outcome of the litigation." *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378. As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement." *In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1043. In fact, experienced counsel's judgment in this respect carries considerable weight. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 528.

The settlement negotiations were conducted by experienced class counsel who have been prosecuting this Action since its inception. (*See* Mahoney Dec., ¶5; Declaration of John A. Young "Young Dec." ¶2.) Class counsel wholeheartedly endorses the settlement agreement as fair, reasonable, and adequate. (Mahoney Dec., ¶36; Young Dec., ¶9.) That endorsement is the product of arm's length negotiations through two respected mediators who are familiar with legal and discovery issues arising frequently in class actions. (Mahoney Dec., ¶¶6-7.) The Court should therefore credit counsel's recommendation that the settlement warrants preliminary approval. *See Linney*, *supra*, 151 F.3d 1234 (N.D. Cal. July 18, 1997) 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997). In the opinion of Class Counsel, the Settlement is fair and reasonable. (Mahoney Dec., ¶36; Young Dec. ¶9.)

### E.    Arm's length negotiation free from collusion

When a class settlement is reached before class certification such as the case here, courts are "particularly vigilant" in searching for signs of collusion. *In re Bluetooth*, *supra*, 654 F.3d at 946–47. Courts must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests

and that of certain class members to infect the negotiations." *Id.* at p. 947. Such signs include "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," disproportionate distributions of settlement funds to counsel, and clear-sailing arrangements, none of which exist here (*Id.*) Although the "proposed settlement need not be ideal", it "must be fair, free of collision, [and] consistent with counsel's fiduciary obligations to the class." *Rollins v. Dignity Health,* 336 F.R.D. 456, 461 (N.D.Cal. 2020). The involvement of a mediator is evidence the negotiations were conducted at arms' length. *Joh v. American Income Life Ins. Co.,* 2020 WL 109067 *7 (N.D.Cal. Jan. 9, 2020).

The Parties negotiated this settlement over the course of two (2) mediations with experienced mediators. Subsequently, the Parties negotiated the agreement over the course of weeks, discussing at length language within the agreement and its potential impact on the class. (Mahoney Dec., ¶¶6-7.) This factor weighs in favor of approval.

Accordingly, Plaintiff's counsel's opinion is that this settlement is a fair, adequate, and reasonable resolution of the claims in this lawsuit. (Mahoney Dec. ¶36.) Defendants agrees that certification and approval of this settlement is appropriate as a means to avoid the cost of further litigation, to avoid the disruption to its business and employees associated with litigation, to avoid the disruption of its business relationships, and to efficiently end the litigation.

## VII.    THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS

Federal Rules of Civil Procedure 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."    "The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. (Fed.R.Civ.P. 23(c)(2)(B).) The proposed Class Notice is attached as Exhibit B of Odenbreit Dec., filed concurrently herewith.

In this case, Plaintiff proposes that the Notice of the Settlement will be mailed via U.S. first-class mail to each Class Member's last known address. Defendant agrees to provide the Settlement Administrator, fourteen (14) calendar days following preliminary approval by this Court, Class Data for each Class Member. The Settlement Administrator will perform a search on the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members. Within twenty-one (21) business days of receiving the Class Data, the Settlement Administrator will send via first class mail the Court-approved Notice of Settlement to each Class Member. If a Notice of Settlement is returned because of an undeliverable address, the Settlement Administrator will conduct a skip trace to locate a current address. (Mahoney Dec., Ex. A, ¶¶3.2-3.4.)

The proposed Notice of Settlement provides information on the meaning and nature of the proposed Class; the terms and provisions of the Settlement; the relief the Settlement will provide to Settlement Class Members; the applications of Plaintiff for his Service Award and of Class Counsel for their attorneys' fees and expenses; the payment of the Settlement Administration Costs; the date, time and place of the final settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting objections to the Settlement. If a Class Member chooses to object to the Settlement, they will have forty-five (45) days to submit to the Settlement Administrator an Objection to the Agreement. (Mahoney Dec., Ex. A, ¶4.2.) Further, Class Members that choose to opt out of the settlement will have forty-five (45) days from the mailing of the Class Notice to a request to be excluded from the settlement. (Mahoney Dec., Ex. A, ¶4.3.)

The Notice of Settlement also fulfills the requirement of neutrality in class notices. It summarizes the proceedings to date, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the Manual's statement that "the notice should be accurate, objective, and

understandable to Class Members." The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendant and recognizes that the Court has not ruled on the merits of the action. (Mahoney Dec., Ex. A, Exhibit A to the Settlement Agreement pg. 1.) It also states that the final settlement approval decision has yet to be made. Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. (See Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2); 23(e).)

## VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval; and Class Members or their counsel may be heard in support of or in opposition to the Settlement Agreement. The Parties propose that the final approval hearing be held on or after October 30, 2024, or a date thereafter convenient for the Court.

## IX. CONCLUSION

For the foregoing reasons, the Parties respectfully request the Court make orders as to the following:

1. Certifying for settlement purposes only the following classes:

   a. All current or former non-exempt employees who worked for Defendant in California during the Class Period. This definition expressly excludes any former non-exempt employees who worked for Defendant in California during the Class Period (i) who signed severance agreements in connection with reductions in force and who were not re-hired to work for Defendant in California after executing the severance agreement or (ii) who participated in the

Walker Settlement and who have not worked for Defendant in California after January 19, 2021;

2. Appointing Strong Huynh as Class Representative for settlement purposes;

3. Appointing Plaintiff's Counsel, Kevin Mahoney and John Young of MAHONEY LAW GROUP, APC as Class Counsel for settlement purposes;

4. Approving Phoenix Class Action Administrators as Settlement Administrator;

5. Approving the form and content of the Class Notice, and directing the mailing of same;

6. Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

7. Directing Defendant to furnish the Settlement Administrator within fourteen (15) calendar days after the Court grants preliminary approval of the Settlement the Class Data, which shall be compiled in good faith from Defendant's records to include for each Class Member;

8. Setting a Final Approval Hearing.

Date: June 25, 2024          By:   *Kevin Mahoney*
                             **MAHONEY LAW GROUP, APC**
                             Kevin Mahoney
                             John A. Young
                             Attorneys for Plaintiff, Strong Huynh

MEMORANDUM OF POINTS AND AUTHORITIES